IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WASHER & REFRIGERATION SUPPLY CO., INC., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 2:09-CV-1111-WKW [WO] |
| PRA GOVERNMENT SERVICES, LLC, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs have raised the issue whether the court lacks subject matter jurisdiction because of the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, and the parties have briefed this issue. (Docs. # 26, 27, 29.) Because the TIA deprives the court of subject matter jurisdiction, this action is due to be dismissed without prejudice.

## I. JURISDICTION AND VENUE

Whether the TIA deprives the court of subject matter jurisdiction is the topic of this opinion. There is no dispute as to personal jurisdiction or venue.

## II. FACTS

The discussion of facts will be limited to what is necessary to analyze the jurisdictional issue. This case is a putative class action, filed originally in state court and then removed to this court by Defendants (Doc. # 2), who asserted federal jurisdiction under the diversity jurisdiction statute and the Class Action Fairness Act. 28 U.S.C. §§ 1332, 1453. Plaintiffs filed a motion to remand (Doc. # 14), but that motion was denied as moot when

they filed the Amended Complaint appearing to raise federal questions, and thus giving rise

to jurisdiction under 28 U.S.C. § 1331.[1] (Doc. # 22 (Order explaining reasoning for the

exercise of federal question jurisdiction).) Defendants had previously filed a motion to

dismiss (Doc. # 6), which was briefed after the denial of the motion to remand. Thereafter,

Plaintiffs brought the TIA to the court's attention, and the parties engaged in an additional

round of briefing with respect to that statute.

The Amended Complaint alleges that Defendants contracted with approximately 250

Alabama counties and municipalities to "outsource tax assessment, collection, administration,

and appeals services." (Doc. # 19, ¶ 2.) Named Plaintiffs are Washer & Refrigeration

Supply Co., Inc. ("WRS"), and its president, David R. Smith. (Doc. # 19, ¶¶ 7, 8.) WRS was

assessed approximately $50,000 in sales tax debt, interest, and penalties by Defendants for

tax years 2003 through 2006; Defendants then caused WRS to execute an "Agreement to

Entry of Final Assessment," agreeing to make installment payments on the debt, without

informing WRS that it had the right to administrative review. (Doc. # 19, ¶ 7.)

Plaintiffs argue that the system of tax assessment and collection in which Defendants

have played a part violates Alabama law, because counties and municipalities are not

---

[1] Upon further review, the court is skeptical whether the "federal question" raised in Count Eight
of the Amended Complaint would suffice to confer jurisdiction. The claim is titled "violation of due
process," and contains a single reference to the "United States Constitution," as well as that of Alabama.
(Doc. # 19, at 57-58.) There is no freestanding cause of action against state officials in their individual
capacities (or here, private parties with whom they act in concert) for violations of the federal
constitution; such an action would have to proceed under a statute, such as 42 U.S.C. § 1983, creating a
private right of action. But no such source of law is cited. Because the case will be dismissed for lack of
subject matter jurisdiction under the TIA, however, it is unnecessary to decide whether federal question
jurisdiction was created by Count Eight.

permitted to delegate their taxing authority to private entities.  (Doc. # 19, ¶ 14); s*ee* Ala.

Const. 1901 art. XI § 212.  The scheme is further said to violate the Alabama Taxpayers' Bill

of Rights ("TBOR"), a set of statutes enacted in 1992.  *See* Ala. Code §§ 40-2A-1, *et seq*.

TBOR was made applicable to local taxing authorities by the 1998 Local Tax Simplification

Act.  Ala. Code §§ 11-51-210 (municipalities); 11-3-11.2 (counties); *see GMAC v. City of*

*Red Bay*, 894 So. 2d 650, 653 (Ala. 2004).  Plaintiffs concede that TBOR "presupposes" that

local governments may hire private firms "to perform a limited range of tax-administration

support services," including "(A) collecting taxes that have previously been levied and

assessed by counties and municipalities, and (B) auditing taxpayers' books and records for

the purpose" of determining correct assessments.  (Doc. # 19, ¶ 18.)  Plaintiffs assert that

Defendants have illegally been permitted not just to collect taxes and perform audits, but to

"enter assessments and conduct administrative procedures," functions reserved to

government bodies by TBOR.  (Doc. # 19, ¶ 19.)

Another provision of TBOR, referred to by Plaintiffs as its "Bounty Hunter

Provision," but perhaps more accurately described as an anti-bounty hunter provision,

restricts the scope of contracts between local governments and private firms for tax

assessment and collection.  *See* Ala. Code § 40-2A-6(a).  Plaintiffs assert that this provision

has been violated because Defendants receive contingent awards for examining taxpayers'

books and discovering tax liabilities, and for allowing firms to be involved both in

determining the amount of taxes due and collecting the same taxes.  (Doc. # 19, ¶¶ 22, 23.)

Still other provisions of TBOR prohibit certain compensation arrangements for private firms, and establish bonding requirements for the firms; Plaintiffs allege both have been violated here. (Doc. # 19, ¶¶ 27-32.) Finally, TBOR guarantees a right to appeal to the circuit court of the county wherein an assessment was made, a right Plaintiffs claim was not granted to them when Defendants assessed and collected taxes. (Doc. # 19, ¶¶ 33-36.)

The Amended Complaint makes lengthy and detailed allegations about the contracts and business practices of Defendants; it is unnecessary to repeat those details here. It is helpful to explain that Plaintiffs allege the existence of two contracts, a "Discovery Contract," and an "Administration Contract" between Defendants and local governments. (*See, e.g.*, Doc. # 19, ¶ 43.) Both contracts are said to violate TBOR for multiple reasons, including its anti-bounty hunter provision, its prohibition on compensation being tied to collections, its prohibition on private firms conducting assessments, and denial of appeal rights. The Amended Complaint then proceeds to make allegations in furtherance of class certification, which are not relevant at this stage of the lawsuit.

The Amended Complaint pleads twelve counts against all Defendants. The first four counts seek declaratory judgments that TBOR has been violated, by, respectively, the Discovery Contract, the Administration Contract, the receipt of prohibited compensation, and the failure to comply with its bond requirements. (Doc. # 19, ¶¶ 144, 149, 154, 157.) These counts seek orders stating that the contracts between Defendants and taxing authorities are "void and unenforceable" and that "any and all tax assessments, liens, levies, and collections

4

performed in relation to Defendants'[] contracts are invalid, void, and constitute unlawful takings." (Doc. # 19, ¶ 148.)  Count Four also requests that Defendant RDS forfeit its license for six months for failure to comply with the bonding requirements.  (Doc. # 19, ¶ 160.)

Count Five is for unjust enrichment, and seeks the imposition of a constructive trust on all monies resulting from the unjust enrichment.  (Doc. # 19, ¶ 161.)  Count Six is for "negligence, recklessness and/or wantonness," and seeks damages including "a disgorgement, refund and return of all monies improperly assessed and collected."  (Doc. # 19, ¶ 167.)  Count Seven seeks injunctive relief prohibiting Defendants from any conduct violating TBOR or other Alabama statutes, invalidating and removing all liens improperly imposed by Defendants, "returning all real and personal property . . . seized" by Defendants, "enjoining Taxing Jurisdictions from using or relying upon taxpayer information obtained, directly or indirectly, from Defendants," and "mandating Defendants to recoup taxes remitted to Taxing Jurisdictions through" their previous contractual arrangements. (Doc. # 19, ¶ 169.)

Count Eight asserts claims for violation of Plaintiffs' state and federal constitutional rights to due process; it seeks "disgorgement, refunds and return" of funds seized as relief. (Doc. # 19, ¶ 172.)  Count Nine is entitled "Claim for Refund," and requests that Defendants be required to refund all monies they improperly seized from Plaintiffs.  (Doc. # 19, ¶ 173.)  Count Ten is entitled "Disgorgement," and requests disgorgement of all "revenues and profits which Defendants have received" through their improper relationship with local governments. (Doc. # 19, ¶¶ 176-78.)  Count Eleven is for breach of contract, and argues

5

that, even if the Discovery and Administration Contracts are not void, Defendants have

breached them, and Plaintiffs are entitled to damages as a result. (Doc. # 19, ¶ 183.) Finally,

Count Twelve, for slander of title, asserts that Defendants' illegal practices have slandered

titles to various property owned by Plaintiffs as a result of the attachment of unlawful tax

liens.  (Doc # 19, ¶¶ 184-87.)

## III.  STANDARD OF REVIEW

A court has an ongoing "obligation . . . to examine its own [subject matter]

jurisdiction . . . at each stage of the proceedings." *Bochese v. Town of Ponce Inlet*, 405 F.3d

964, 975 (11th Cir. 2005).  Here, Plaintiffs have raised the issue of the court's subject matter

jurisdiction under the TIA.  The court is bound to consider the merits of the jurisdictional

question, despite it being raised by Plaintiffs only after their original motion to remand was

denied as moot.

## IV.  DISCUSSION

The TIA imposes a jurisdictional limitation on the subject matter of cases a federal

court may hear.  *Amos v. Glynn Cnty Bd. of Tax Assessors*, 347 F.3d 1249, 1255 (11th Cir.

2003).  It provides: "The district courts shall not enjoin, suspend or restrain the assessment,

levy or collection of any tax under State law where a plain, speedy and efficient remedy may

be held in the courts of such State."  28 U.S.C. § 1341.  The TIA applies when two

conditions are met: "'(1) the relief requested by the plaintiff will enjoin, suspend, or restrain

a state tax assessment, and (2) the state affords the plaintiff a plain, speedy and efficient

remedy.'" *Amos*, 347 F.3d at 1255 (quoting *Williams v. City of Dothan*, 745 F.2d 1406, 1411 (11th Cir. 1984) (internal quotation marks omitted)).   "'[T]he mere illegality or unconstitutionality of a state . . . tax is not in itself a ground for equitable relief in the courts of the United States.  If the remedy at law is plain, adequate, and complete, the aggrieved party is left to that remedy in the state courts.'" *Id.* at 1256 (quoting *Moe v. Confederated Salish & Kootenai Tribes of Flathead Reservation*, 425 U.S. 463, 470 (1976) (alteration in the original)).

In *Amos*, the suit "plainly [sought] to enjoin a state tax assessment," so the first prong of the test was not discussed by the court.  *Id*. at 1255.  Here, somewhat more analysis is required.  As in *Amos*, Plaintiffs have proceeded by seeking a declaratory judgment, although the judgments sought are not identical.  In *Amos*, the suit was brought directly against a county tax assessing body; the plaintiffs asserted that its method of selectively re-evaluating certain properties each year violated their constitutional right to equal protection.  *Id*. at 1251-53.  Here, the suit is brought against private companies that have contracted with local taxing authorities to perform certain services related to taxes owed to those bodies. Defendants argue that their private nature is itself fatal to any claim that this suit is barred by the TIA.  While Defendants are correct that no cited cases have applied the TIA to a case against a private defendant, that is not dispositive.  The arrangements at issue here, are, apparently, relatively novel ones, and it is understandable that the vast majority of lawsuits concerning the TIA would have been brought directly against governmental entities.  But

neither the statute nor the Eleventh Circuit's test makes the identity of the defendants a prerequisite to applying the TIA.

Regardless of the identity of the defendants, then, the question is whether the "relief requested . . . will enjoin, suspend or restrain a state tax assessment." It is noteworthy that the focus is not on the precise contours of the causes of action brought or factual averments made by plaintiffs, but on the bottom line *relief* they seek. That point is particularly salient in this case, where Plaintiffs have brought twelve counts of various descriptions, but have sought similar and overlapping forms of relief in many of the counts. For example, the four declaratory judgment counts all seek declarations that the contracts between the taxing authorities and Defendants are void and unenforceable, and further that "any and all tax assessments, liens, levies, and collections performed in relation to Defendants'[] contracts are invalid, void, and constitute unlawful takings." (Doc. # 19, ¶ 148.) Count Seven seeks similar injunctive relief, including an injunction against the non-party taxing authorities concerning their use of information obtained from Defendants. (Doc. # 19, ¶ 169.) Counts Five, Six, Eight, Nine, and Ten all seek equitable remedies, such as disgorgement, the imposition of constructive trusts, and "refund[s]" of taxes improperly collected. Counts Eleven and Twelve, although stating distinct causes of action for breach of contract and slander of title, again seek relief "including a disgorgement, refund, and return of all monies improperly assessed and collected." (Doc. # 19, ¶ 183.)

Defendants simply fail to explain how the relief sought, if obtained, would not at least "restrain" the assessment and collection of taxes, if not actually "enjoin [and] suspend" them in some cases as well. Defendants claim that a "refund" would be impossible, given that the taxing authorities are not parties to this suit. (Doc. # 28, at 2.) First, this argument depends on accepting Defendants' view on the merits, rather than simply evaluating the relief sought by Plaintiffs. Second, it depends on defining the word "refund" to include only funds paid out directly by the taxing authorities. But there is no indication this is what Plaintiffs mean by the word, and that definition seems overly restrictive in light of the arrangements between Defendants and the taxing authorities. If Defendants were compelled to pay substantial damages to Plaintiffs, whether under the guise of a "refund," "disgorgement," or "constructive trust," it would have a significant impact on the taxing authorities' ability to contract with private companies as permitted under Alabama law. Deciding that such damages were due would require this court to make substantive declarations concerning state tax law that would necessarily including passing judgment on the taxing authorities' own conduct in making and enforcing contracts with Defendants. This would necessarily place a "restraint" on the assessment and collection of taxes in the way the taxing authorities see fit.[2]

---

[2] Nor is there any requirement, as Defendants imply, that for a suit to be barred by the TIA, it must be directed at the constitutionality of a state statute or of particular taxes or ordinances enacted by the taxing authorities. (Doc. # 12, at 2, 3.) *Amos* itself concerned the manner in which the taxing authority assessed property taxes, not the taxes themselves or underlying state laws.

Other cases cited by Defendants relate to the distinguishable situation in which statutes

or ordinances contain some portions related to taxation, and other portions with a more

general regulatory purpose.  (Doc. # 12, at 4-5.)  In such situations, the TIA does not bar a

federal court from hearing constitutional challenges to the non-tax portions of the regulations

challenged.  *See Miami Herald Pub. Co. v. City of Hallandale*, 734 F.2d 666, 671 (11th Cir.

1984) (holding that a provision requiring full compliance with the city code before any

vending machine licenses could be issued was "regulatory," and did not have a "tax

purpose").  By contrast, the whole of this lawsuit concerns the methods by which the taxing

authorities have chosen to contract with Defendants to further the operation of their tax

systems; there is no "regulatory" provision to be severed away and considered separately.

Defendants discuss the Sixth Circuit's opinion in *BellSouth Telecommunications., Inc.

v. Farris*, 542 F.3d 499, 501 (6th Cir. 2008).  There, a state law both imposed a tax on phone

carriers, and prohibited the carriers from passing the tax through to their customers.  *Id*.  The

court held that the TIA did not bar a First Amendment claim against the latter provision,

because the plaintiffs did not seek "'orders enabling them to *avoid paying state taxes*.'"  *Id*.

(quoting *Hibbs v. Winn*, 542 U.S. 88, 107 (2004) (emphasis in the original)).

To the contrary, Plaintiffs here seek precisely such orders; the fact that the taxes are

remitted through private corporations under contract to taxing authorities does not make the

monies paid any less taxes assessed and collected under state law.  It would plainly "hinder"

the authorities' "interest in collecting" taxes to impose injunctions and substantial damages

10

on the corporations with which they have chosen to contract in furtherance of their tax systems. *See id*. Nor is this case like *Wells v. Malloy*, 510 F.2d 74 (2d Cir. 1975), in which a taxpayer sought to contest the penalty of losing his driver's license for nonpayment of state taxes. The challenged acts here include the imposition of liens and levies, described by *Wells* as encompassed by the TIA, and not just a "general use of coercive power." *Id*. at 77.

While this case is unusual, that does not mean the TIA's jurisdictional bar is inapplicable if its requirements are met. The relief sought in this case would enjoin, restrain, and suspend the assessment and collection of state taxes, albeit not by directly enjoining taxing authorities. But the TIA does not say *who* must be enjoined; it only says *what* must be. Accordingly, the relief sought by Plaintiffs in this lawsuit would "enjoin, suspend or restrain" the assessment and collection of state taxes, meeting the first prong of the TIA test.

The second prong of the test is that an adequate remedy for the injury exists in state court. Plaintiffs claim that such remedies do exist, and Defendants do not dispute this assertion. Moreover, even in the unique context of this case, this issue would seem less susceptible to any potential "gaming" by Plaintiffs. If Plaintiffs are incorrect and there is no adequate state court remedy for their claims, they will be out of luck, having already requested and secured dismissal of their case from federal court on TIA grounds. There is neither a contention nor other reason to think that state courts could not provide an adequate remedy in this case. Accordingly, the second prong of the TIA test is also met.

## V.  CONCLUSION

The TIA deprives this court of subject matter jurisdiction over this case.  Accordingly,

it is ORDERED that this action is DISMISSED without prejudice.  It is further ORDERED

that Defendants' motion to dismiss (Doc. # 23) is DENIED as moot.

A final judgment will be entered separately.

DONE this 8th day of September, 2010.


                                    /s/ W.  Keith Watkins
                              UNITED STATES DISTRICT JUDGE